UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOSEPH P. O'BRYAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-76-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FEDERAL BUREAU OF PRISONS, | ) | **AND ORDER** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the Defendants' motion to dismiss or, in the alternative, for summary judgment. Because the Court concludes that material issues of fact are not in dispute and the Defendants are entitled to judgment as a matter of law, the Defendants' motion for summary judgment will be granted.

BACKGROUND

In March of 2007, Plaintiff Joseph P. O'Bryan, an individual confined in the Federal Prison Camp ("FPC") in Manchester, Kentucky, paid the District Court's $350.00 filing fee and initiated this *pro se* civil rights action seeking damages, including punitive damages, under 28 U.S.C. §1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). O'Bryan complained of his medical treatment at the FPC, claiming that the individuals providing this treatment were grossly negligent and displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment. As Defendants,

-1-

he named the Federal Bureau of Prisons ("BOP") and three of the FPC's medical personnel, in their official and individual capacities:  Health Services Administrator Ms. Niharika Shah; Clinical Director Louis Cordero; and Physician's Assistant Ms. Zadia I. Indife.[1]  Additionally, O'Bryan stated that there are John Doe Defendants who may be identified at a later date.

Upon screening the complaint and attached documents, the Court issued a Memorandum Opinion and Order in which it summarized the Plaintiff's allegations beginning with June of 2004, when O'Bryan injured his right wrist in a fall at the prison.  He did not seek medical attention immediately, but waited until July 6th, when he went to facility's medical clinic.  After his wrist was examined there, O'Bryan was given an Ace bandage.  He alleges that he complained of persistent pain over the next several weeks (until August 10th) when an x-ray was finally performed and a "fracture with cystic bony obstruction of the navicular" was diagnosed. A later x-ray, performed on October 14, 2004, purportedly showed mild improvement since the August x-ray.

O'Bryan claims that he received no further treatment "to speak of" until May of 2005, when he was approved for an examination by an orthopedic specialist outside the prison.  During the June 1, 2005, examination, the specialist allegedly expressed concern that the break had not healed in eleven months.  Nonetheless, he attempted to treat the injury.  O'Bryan claims that when his wrist had not healed after three different casts and a thumb spica brace (on October 12, 2005), the orthopedist told him that "a surgical reduction on the navicular with possible bone grafting would be required because of the delays in treating the injury initially."

---

[1]      In her declaration attached to the instant Motion [Record No. 15], this Defendant states that her name is Zaida Ndife.  The Court will use this spelling hereafter.

-2-

O'Bryan asserts that from the date of that recommendation in October 2005, until March 7, 2006, the Defendants failed to schedule the referral with a hand surgeon. As a result of this delay, he initiated the Bureau of Prisons administrative remedy process. In the attached appeal to the warden, he blamed the three named Defendants for the delays, alleging that this is evidence of their deliberate indifference to his serious medical needs. (*See* Exhibit 1(D) [hereafter, "Ex ___"].) The responding BOP officials' explanation was that although the Utilization Review Committee approved the surgical consultation on October 24th, personnel had difficulty scheduling one locally. Ex. 1(F, H).

On March 17, 2006, O'Bryan was examined by a hand surgeon who ordered an MRI. On April 21, 2006, that surgeon purportedly "diagnosed a non union fracture of the right scaphiod with 'advanced collapse.'" In late April 2006, however, the hand surgeon decided not to perform surgery, purportedly because the injury was so old and the results might not be satisfactory. And on June 30, 2006, after the BOP arranged an alternative plan for the surgery, the Plaintiff was transferred from the Manchester facility to the BOP's Federal Medical Center in Lexington, Kentucky.

On August 29, 2006, a different surgeon performed the wrist surgery, "a right navicular carpectomy," at the University of Kentucky Hospital, in Lexington. Meanwhile, a few days after the surgery (September 8, 2006), the National Office of the BOP issued its final response to the Plaintiff's administrative appeals, thereby exhausting the administrative remedy process. The Administrator of National Inmate Appeals wrote that, although the surgical repair "was delayed due to the consultant physician not being willing to perform the surgery," still the BOP

believed that O'Bryan had received appropriate evaluation and treatment of his wrist injury.  Ex. 1(K).

In October 2006, medical staff at the Lexington prison provided the Plaintiff with a wrist brace and hand exerciser for physical therapy.  Thereafter, in February 2007, he was returned to the FPC in Manchester.  The next month, O'Bryan filed this action, contending that as a result of the Defendants' delay in providing proper diagnosis, treatment, surgery and rehabilitation, he is left with a limited range of motion in his right hand, a scar, and partial disability.

After summarizing the Plaintiff's factual allegations, the Court dismissed O'Bryan's claims against the BOP and the individual Defendants in their official capacities on sovereign immunity grounds.  In addition, the Court informed the *pro se* Plaintiff on the need to name and serve John Doe Defendants within 120 days, as provided in Federal Rule of Civil Procedure (FRCP) 4(m).  Finally, the Court provided directions to the Clerk of the Court that summons should issue for three Defendants in their individual capacities.

<u>THE DEFENDANTS' MOTIONS</u>

The Defendants have responded to the complaint with a motion to dismiss or, in the alternative, for summary judgment, together with a supporting memorandum of law.  The accompanying declarations of the three named Defendants explain their individual roles in treating the Plaintiff's wrist.  In addition, the Defendants have submitted the declaration of a BOP lawyer who verifies the attached BOP and medical records relating to O'Bryan's treatment. It is the government's position that O'Bryan received appropriate medical treatment at all time relevant to this action.

-4-

Relying on *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), and its progeny, the Defendants contend that, to the extent that Plaintiff claims that these Defendants were negligent, any act of mere negligence does not rise to the level of a cognizable *Bivens* claim. In addition, they assert that, to the extent that O'Bryan claims that the Defendants were deliberately indifferent to his serious medical needs, he has not presented one of the two components necessary to state a cognizable claim under the Eighth Amendment, *i.e.*, a culpable state of mind in any of the Defendants. Therefore, Defendants Shah, Cordero and Ndife, seek dismissal of this action for failure to state a claim.

Alternatively, the Defendants assert that should the Court construe their pleading as a Motion for Summary Judgment, based on the same medical records, summary judgment is appropriate because there are no material issues of fact in dispute and they are entitled to judgment as a matter of law. Finally, the Defendants contend that they are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

<u>THE PLAINTIFF'S RESPONSE</u>

O'Bryan reminds the Court of its obligation to liberally construe a *pro se* plaintiff's pleadings and to assume the truth of his allegations at this stage of the proceedings. He also expresses anger at the stack of medical documents attached to Defendants' motion (approximately 200 pages), while asserting that the Defendants are trying "to turn this matter into a 'paper piling' contest." *Id.* at 8. In responding to the motion to dismiss, the Plaintiff conrrectly states that dismissal under Rule 12(b)(6) should not be granted unless "it is clear that no relief could be granted under any set of facts that could be proven consistent with the

allegations," citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984). Additionally, O'Bryan points to the two components for asserting an Eighth Amendment conditions of confinement claim, and insists that both are present. Further, with regard to demonstrating the Defendants' culpable state of mind, he asserts that the requisite state of mind may be manifested in delaying – not just denying – treatment. He states that this is exactly what happened in his case.

O'Bryan also argues that summary judgment is not appropriate because there are numerous, unresolved issues of material fact concerning his treatment. In fact, he outlines eight purported issues. [*See* Record No. 17, p. 13.] He insists that, contrary to Ndife's contentions that she initially provided a "wrist brace" to him, he had only a "bandage" for the entire first year post-injury. O'Bryan refers to the same matters as being examples of the Defendants' deliberate indifference to him as they have cited to establish their constant attention to his medical needs. O'Bryan attaches some of the same medical records supplied by Defendants, gives his opinion on those which are the most telling and useful to his claims, and attaches medical articles on the nature of his specific injury.

Further, O'Bryan maintains that the Defendants' actions are not protected by qualified immunity because they violated clearly established rights of which a reasonable person in their position would have known. Accordingly, the Plaintiff urges that the Court to deny the relief requested by the Defendants.

### THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

O'Bryan has also filed a Motion for Appointment of Counsel [Record No. 18], to which the Defendants have filed a Response [Record No. 19]. The request is based upon the Plaintiff's

limited education and knowledge of civil rights law, his inability to personally investigate the asserted claims, his inexperience at discovery and presentation of testimony, the factual and legal complexity of the case (including medical issues which will require expert testimony), his limited access to a law library, and the meritorious nature of his case.  The Defendants disagree with each of O'Bryan's assertions and request that the motion be denied.

## DISCUSSION

### Applicable Standards

To state a claim cognizable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a plaintiff must plead two essential elements.  First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States.  Second, a plaintiff must indicate that the defendants allegedly depriving him of those rights acted under color of federal law.  *Bivens*, 403 U.S. at 397.  The alleged constitutional violation in this case is the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment against those convicted of crimes.  *Gregg v. Georgia*, 428 U.S. 153, 171-73 (1976).  The Supreme Court has held that "to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Therefore, a prisoner-plaintiff must show both "deliberate indifference" and "serious medical needs."  *Id.* at 106.

The Defendants to this action claim that the Plaintiff has failed to state an Eighth Amendment claim because he has not shown that any of them were deliberately indifferent to

his broken wrist.  Therefore, they claim that the action should be dismissed for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).

O'Bryan correctly notes that, in considering a Rule 12(b)(6) motion, the court must take well-pled allegations as true and construe them most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).   As the Sixth Circuit has indicated, "[t]o survive a motion to dismiss . . . a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.  Nonetheless, conclusory allegations or conclusions will not suffice to prevent a motion to dismiss."  *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citations omitted), *cert. denied*, 126 S.Ct. 1911 (2006).  However, rule 12(b)(6) also provides that:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.*

Thus, the plain language of the rule requires that if matters outside the pleadings (such as affidavits and medical records) are considered, the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842

(6th Cir. 1993).  In the present case, because the Defendants' attached declarations and exhibits go to the merits of the Plaintiff's Eighth Amendment and this Court has considered their content, the Court will consider the matter under Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

The Supreme Court has further directed, a court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial; "metaphysical doubt" is insufficient.  *Matsushita*, 475 U.S. at 587.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).  The moving party has the burden of showing there is an absence of evidence to support a claim.  *Celotex*, 477 U.S. at

-9-

324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

Because the Defendants contend that the Plaintiff has failed to meet the applicable standards for stating a constitutional claim and also that they are entitled to qualified immunity, the Court will also examine the latter standard. With respect to this issue, the Supreme Court has noted that, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has indicated that the first step of this analysis is to determine whether a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Therefore, the question of whether the named Defendants are entitled to qualified immunity is the same as the initial question herein, *i.e.*, whether a constitutional violation occurred at the hands of persons acting under color of federal law. The Plaintiff has the burden of establishing that his rights were violated and that the Defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting *Celotex,* 477 U.S. at 322).

<u>The Standards for an Eighth Amendment Claim</u>

-10-

As stated previously, in *Estelle v. Gamble,* 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment is violated when prison officials are deliberately indifferent to the serious medical needs of prisoners.  The Court further explained that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle,* 429 U.S. at 104-05 (internal quotation and citation omitted).  The *Estelle* Court concluded that such deliberate indifference provides a cause of action under 42 U.S.C. § 1983. *Id.*

And as the Sixth Circuit has recognized, "the deliberate indifference standard contains both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?)."  *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (citing  *Wilson v. Seiter*, 115 L. Ed. 2d 271, 279 (1991)) .  *See also Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001), *cert. denied*, 537 U.S. 817 (2002); *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir.1993) (quoting *Estelle,* 429 U.S. at 104-05); *Hicks v. Frey,* 992 F.2d 1450, 1454-55 (6th Cir.1993).  To satisfy the objective component of an Eighth Amendment claim, a plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Comstock*, 273 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th

-11-

Cir.2004) (citation omitted); *see also Loggins v. Franklin County, Ohio*, 2007 WL 627861 (6th Cir. 2007) (unpublished).  The Court has assumed that a broken wrist is a serious medical need.

"Deliberate indifference," the subjective component of an Eighth Amendment claim, requires a culpable state of mind on the part of a defendant.  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.  *Comstock*, 273 F.3d at 703. Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in intentionally *denying or delaying* access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104 (emphasis added).  A prisoner states the proper Eighth Amendment component of the culpable state of mind "when he alleges that prison authorities have denied reasonable requests for treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Sanderfer v. Nichols,* 62 F.3d 151, 155 (6th Cir.1995); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991); *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) (per curiam).

<u>The Individual Defendants</u>

In the case presently before the Court, the Defendants have submitted declarations attesting to their differing responsibilities in caring for O'Bryan's wrist injury.  As Health Services Administrator, Defendant Shah declares that she has "supervisory responsibility for mid-level practitioners, clerical staff, and paraprofessional staff . . . budget and procurement. .

-12-

. .'"  She claims to have had no part in O'Bryan's medical care, except that, upon request of clinical staff, in January of 2006, she a made the request for a medical "redesignation" for O'Bryan so that he could go to a central BOP medical facility for treatment, a request which evidently needed approval at a higher level of the BOP.  This was denied, with the instruction that the staff pursue local treatment for the Plaintiff.  After a surgeon in the area was located, Shah submitted another request in June 2006.  This request was approved, and O'Bryan was transferred to FMC-Lexington for surgery.  In addition to routinely approving trips to outside medical consults, Shah authorized the order for a "Thumb Spica," recommended by the specialist.

Thus, it appears that Defendant Shah is an administrator who made no independent medical decisions but did affect the Plaintiff's treatment by supplying what medical providers recommended and/or requested.  O'Bryan does not deny this contention.  However, in response to the Defendants' motion, he asserts that Shah and Cordero "knew or should have known at each level that Plaintiff's serious medical needs were not being adequately addressed or cared for."

A plaintiff in a civil rights lawsuit must do more than make broad allegations.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Instead, he must assert that each defendant was personally involved in the complained-of action.  *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988);  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979).  To find supervisory personnel liable, a plaintiff must allege that the supervisor condoned, encouraged or participated in the

-13-

alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989). Here, O'Bryan's allegations (originally and in response to the current motion) do not contain any such description of Shah's personal involvement in the alleged violation of his rights. Therefore, she is entitled to dismissal from this lawsuit. *See Shehee v. Luttrell*, 199 F.3d 295, 299-300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

Defendant/physician Cordero also describes himself primarily as an administrator, "the clinical supervisor for the mid level providers, . . . Dental Officer, and the registered nurses." However, he admits that he did make some decisions about O'Bryan's medical care. In fact, he had an active role in co-signing staff requests for outside medical consults for prisoners, including Plaintiff, and obtaining the needed approval of them by the institution's Utilization Review Committee.

Medical records show that Cordero's involvement began four months after the Plaintiff's injury (October 2004). Cordero was notified by Defendant Ndife that O'Bryan's first x-ray revealed a break. He signed-off on this x-ray report on October 13, 2004, and the follow-up x-ray report on December 8, 2004, noting on the latter, "Refer to Ortho." In his declaration, Cordero states that he was involved in [and records show his co-signing for] approval of Plaintiff's several trips outside the institution for medical attention, including his consultation with and treatment by the orthopedic specialist, Dr. Dubin. Cordero describes later reviewing Dr. Dubin's report and recommendation for surgery; approving trips to a Lexington hand surgeon; and discovering that the surgeon had decided to withdraw. Additionally, Cordero's co-

-14-

signing of the notes of prison medical staff and Utilization Review Committee decisions appear throughout O'Bryan's medical records.

As stated above, O'Bryan has broadly alleged that Cordero "knew or should have known at each level that Plaintiff's serious medical needs were not being adequately addressed or cared for." While this is a broad allegation, because Cordero is a doctor and because his medical evaluation constituted active participation in certain events throughout the Plaintiff's treatment at the FPC-Manchester, this Defendant is not entitled to dismissal as being solely an administrator. Rather, his actions will be examined below and measured against the legal standards for stating a claim of deliberate indifference.

The third Defendant, Zaida Ndife, directly treated Plaintiff's wrist. She and the other Defendants describe her duties as "a Mid-Level Practitioner," responsible for managing the sick call clinic daily, providing emergency services, discriminating between normal and abnormal findings, performing minor surgical procedures, prescribing medications, treating illnesses, being the primary provider of evaluations of new complaints, and sitting on the Utilization Review Committee. In her declaration, she states that her treatment of O'Bryan began "on August 11, 2004, when he reported having an injury around mid-June . . . reported to medical three weeks later on July 6, 2004."

Ndife traces her treatment of O'Bryan from August 11, 2004, to the time he was transferred to Lexington for his surgery in June 2006. She resumed his care upon his return to the FPC in Manchester in 2007. Like Dr. Cordero's, Ndife's actions regard treatment for the Plaintiff's injured wrist will be scrutinized under the relevant legal standards.

-15-

The Court notes that Plaintiff's claims regarding the medical attention (or lack of medical attention) centers on three time periods:  (1) June of 2004 - October of 2004, *i.e.* the 4-months from his fall to the time of a second x-ray, when he purportedly asked for pain medicine and a cast; the time immediately thereafter; (2) October of 2004 - May of 2005, when he purportedly received no treatment "to speak of"; and (3) October of 2005 - March 17, 2006, the time after surgery was recommended to the date he was examined by a hand surgeon.  The Court will evaluate each of these time periods in relation to the medical records which have been provided.

<u>June of 2004 - October of 2004</u>

In mid- or late-June 2004, O'Bryan fell and allegedly broke his broken right wrist; however, he did not report this accident.  He admits (and medical records indicate) that he did not report the injury to the clinic until July 6, 2004.  O'Bryan claims that initially he was given an ace bandage.  The prison's clinic records for this date indicate, "See injury report," entered by an unidentified person.  O'Bryan did not return to the clinic, "sick call," until either the August 10 or 11, 2004 (approximately 6 to 8 weeks after the injury).  On that date, he saw Defendant Ndife for the first time.  Ndife diagnosed tendinitis and directed the Plaintiff to take over-the-counter ("OTC") medication for pain.  In addition, Ndife ordered an x-ray.

Two months later, on October 14, 2004,  Ndife again saw the Plaintiff for a follow-up visit.  O'Bryan's initial August x-ray showed a "fracture with cystic bony obstruction of the navicular."  During the October visit, the Plaintiff claims that he asked for a cast and pain medication, but only received a second x-ray.  The Clinic's notes written by Ndife, however, indicate that on October 14, 2004, this Defendant ordered the second x-ray, issued Plaintiff a

wrist brace, gave him ibuprofen for 30 days, and scheduled a follow-up appointment in three to four weeks.

The Court must agree with Defendants Cordero and Ndife that there is a complete lack or proof to demonstrate that either displayed deliberate indifference to his wrist injury during this time period. In fact, no allegations are made against Cordero. The records show that it was Plaintiff himself who delayed beginning treatment for the break for several of weeks. And with regard to Defendant Ndife, the records also demonstrate that O'Bryan saw this Defendant for the first time on August 10, 2004. At that time she took several initial actions, including ordering an x-ray. Two months later, she ordered a second x-ray, gave the Plaintiff pain medication, and went to Cordero to begin the process for obtaining authorization for an orthopedic specialist to be consulted.

To the extent that the Plaintiff faults Ndife for mis-diagnosing his wrist injury as tendinitis rather than a break, he fails to state a constitutional claim. At most, he has alleged a claim of simple medical negligence. The Supreme Court's *Estelle* case, referenced *supra*, dealt with this very issue. The doctor who first examined the prisoner-plaintiff in *Estelle* treated him for a lower back "strain" and prescribed pain and muscle relaxing medication. Despite his continuing and constant complaints of severe back pain, the doctors continued to treat the prisoner with only pain relievers for three months (still without an x-ray). The Court held that the choice to use an x-ray is a "classic example of a matter for medical judgment . . . [and] at most it is medical malpractice." 429 U.S. at 107. No constitutional claim was stated by the prisoner there.

-17-

Likewise, O'Bryan has failed to state a constitutional claim against Ndife with regard to her initial diagnosis of tendinitis. To the extent that Ndife was negligent in failing to diagnose the injury as a break, such a mis-diagnosis does not amount to deliberate indifference. *Id.* In short, negligence does not constitute a constitutional claim. *See Durham v. Nu'man,* 97 F.3d 862, 868 (6th Cir.1996) ("[N]egligence or medical malpractice alone is insufficient to establish liability [for deliberate indifference to serious medical needs]." (internal quotation omitted)), *cert. denied,* 117 S.Ct. 1337 (1997); *Sanderfer,* 62 F.3d at 154 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition."); *Hathaway* 37 F.3d at 68 ("[M]ere medical malpractice does not constitute an Eighth Amendment violation."); *see also Molton,* 839 F.2d at 244 ("The conduct for which liability attaches must be more than negligence.").

Although O'Bryan's allegations concerning Ndife use the term "deliberate indifference," the Court fails to find any suggestion of a culpable state of mind. She immediately – and again two months later – ordered x-rays. In her appointments with O'Bryan, Ndife repeatedly evaluated his condition, addressed his pain by directing him to OTC medication or by giving him Ibuprofen, and provided him some type wrap for his injured wrist. (Ndife describes the support as a "wrist brace," while the Plaintiff responds that he asked for a cast but all he had was a "bandage" and that a jury should decide this issue of fact.)

However, the Court finds that the distinction between the two wrist supports (regardless of whether the distinction is significant) is not dispositive. The type of wrap would only go the difference of opinion between a patient and doctor about what should be done, and the Supreme

Court has stated that a difference of opinion regarding the plaintiff's diagnosis and treatment does not state a constitutional claim. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d at 860 n.5. At most, O'Bryan has alleged a difference in opinion with his health care provider regarding the expediency of specific treatment. This does not state a constitutional claim under the facts alleged by the Plainitff. *See Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Byrd*, 701 F.2d at 595.

<u>October of 2004 - May 5, 2005</u>

O'Bryan has identified this period (*i.e.*, the time after his second x-ray) as a time when he received no treatment "to speak of." Again, however, the medical records indicate actions being taken in O'Bryan's behalf. The Plaintiff had a clinic appointment scheduled for November 3, 2004, but did not appear. He did attend a follow-up appointment on December 7, 2004. At that time, Ndife reviewed the October x-ray (which showed the break to be "[m]ildly improved") prescribed more ibuprofen, and wrote in the clinic records that "an orthopedist consult was routed." Cordero co-signed the x-ray report with the notation "Refer to Ortho." [MR 130]

More than two months passed. On March 2, 2005, Ndife indicated that a "request was made for the status of the orthopedist referral," and Plaintiff was told that the requested re-designation to a central medical facility for treatment "was not going to be routed." Ndife told O'Bryan to continue with his wrist brace and OTC medication and ordered a third x-ray, which was taken on March 4, 2005. Records show that Plaintiff saw Ndife at the clinic either once or twice in April of 2005 and that she told him to continue the same medication. The records also indicate that in April 2005, Ndife and Cordero consulted on the March x-ray, which showed a

-19-

"healing fracture with callus formation . . . improved from prior result." [MR 129] On May 5, 2005, Plaintiff was approved to see an orthopedic specialist.

Again, the Plaintiff's allegations concerning this time period are not supported by the medical records. O'Bryan was treated in the clinic in October and December 2005, and he had both off-grounds and clinical appointments on another health issue. These records also demonstrate that the orthopedic redesignation was requested but not approved by BOP authorities in January. At that time, the named Defendants had to formulate a new treatment plan. It appears that by May 5, 2005, the new plan had been formulated and approved. On June 1, 2005, the Plaintiff had his first appointment with the orthopedic specialist (Dr. Dubin).

With respect to the delay experienced in obtaining the referral to an orthopedic specialist, the records indicate active treatment of the Plaintiff in the clinic during this time period and two separate behind-the-scenes attempts to obtain BOP approval for the referral. (The second attempt was ultimately successful.) The Plaintiff does not allege that he could not go to the clinic for medical attention during this time. Further, there is no evidence of this delay from October 2004 to May 2005 as being deliberate or the result of indifference by the Defendants. Deliberate indifference has been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 825).

This Court cannot find any evidence of deliberate indifference in the record of this action. *Bivens* liability can attach only when a plaintiff "demonstrate[s] deliberateness tantamount to

intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted); *see Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

As the Plaintiff's broad allegations are insufficient to suggest any deliberate indifference on the part of Ndife or Cordero in the face of the medical records and affidavits submitted, O'Bryan has failed to state a claim for an Eighth Amendment violation during this time period.

<u>June 1, 2005 - October 12, 2005</u>

During this four and one-half month period, the Plaintiff was in the care of Dr. Dubin and attending several off-site appointments to see him.  O'Bryan has made no clear allegations against any of the Defendants during this period, although the medical records demonstrate that Ndife and Cordero monitored the care provided by Dr. Dubin.  Likewise, O'Bryan has not asserted a claim against Dr. Dubin.  Instead, O'Bryan has stated that from June to August 2005, he went through three casts and a "thumb spica brace."  Medical records show that during this time, the Plaintiff also continued to come to the clinic to see Ndife at the prison.  She prescribed ibuprofen for pain; medical staff gave O'Bryan instruction regarding care for his cast; and Cordero and Shah ordered the Spica Brace recommended by Dr. Dubin.

On October 12, 2005, Dr. Dubin purportedly told the Plaintiff that he would recommend surgery "because of the delays in treating the injury initially."  Dr. Dubin's report from that date

appears at MR 189.  It states that O'Bryan was "doing much better with his wrist," the x-ray on that day showed "continuation of a non union of the navicular," so long as O'Bryan "does not engage in sports or injury [sic] his wrist, he is not having any pain," and "I do feel that he will ultimately . . .  require a surgical reduction of the navicular . . . [and I would] refer him to University of Kentucky for this."

To the extent that the Plaintiff's complaint can be construed as containing allegations of deliberate indifference on the part of any of the named Defendants, the Court finds no deliberate indifference, hence no cognizable claim, stated for this time period.

### October 27, 2005 - March 17, 2006

During the five month period from FPC's receipt of Dr. Dubin's written report recommending surgery until the date the Plaintiff was examined by a hand surgeon, O'Bryan alleges that the Defendants' failure to schedule an earlier appointment (or to move him to another facility) is evidence of deliberate indifference.  In November through December of 2005, the only clinic entries are a notation that the Plaintiff failed to attend an appointment (October 28, 2005), and a fax dated December 13, 2005, from the Manchester prison, requesting an appointment for O'Bryan at Kentucky Orthopedic and Hand Surgeons.  The handwritten response to this query is undated but it shows that the response from that office was "no availability to see this pt [patient]." [MR 187]

In early 2006, O'Bryan's medical records indicate that (on January 9, 2006), at the urging of Ndife and/or Cordero, a request for a redesignation to the BOP's central medical facility was made.  By a memorandum dated January 11, 2006, the request was denied by higher BOP

-22-

authorities.  "Per Dr. Nelson, Chief Health Programs, BOP, local surgery 100 miles is not an undue burden and is not a criteria for transfer.  Please pursue local treatment." [MR 198]  Less than two months later (March 10, 2006), a local surgical surgeon had been found and the surgical consultation had been approved.  One week later (March 17, 2006), the Plaintiff was examined by the hand surgeon.[2]

According to the clinic's records, less medical attention was given to the Plaintiff during this period.  However, he does not indicate that he sought more attention and that his requests were denied.  By the first quarter of 2006, his injury had a history of not healing for 1 and one-half years.  Also, while there was less attention medically, there was more attention administratively.  Further, there is evidence that in December 2005 and January 2006, Cordero, Ndife and Shah were actively seeking a hand surgeon.  It stands to reason that in February 2006, a surgeon was located, as the records show that a referral was approved on March 10, 2006, and an appointment with the surgeon was scheduled for March 17, 2006.

O'Bryan suggests that the Defendants could and should have moved faster, but again, the issue is not whether the Defendants pursued the best or fastest avenues.  The issue is whether this five month delay (or any other time lapse), occurred because the Defendants were deliberately indifferent to the Plaintiff's broken wrist.

---

[2]     O'Bryan does not appear to fault the Defendants with the difficulties encountered when, at the end of April 2006, the hand surgeon changed her mind and decided not to perform the surgery.  She gave multiple reasons, including "his injury is old and results may not be satisfactory to the inmate and he is a high risk for a lawsuit . . . he is likely to still have the same amount of pain." [MR 49]  By June 30, 2006, Shah's second request for redesignation had been approved and O'Bryan was transferred to the FMC-Lexington for another surgeon to perform "a right navicular carpectomy."  This occurred at the University of Kentucky Hospital in Lexington, on August 29, 2006.

It must be remembered that to show an actor's deliberate indifference, "some mental element must be attributed to the inflicting officer before it can qualify." *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). Taking all of the Plaintiff's allegations to be true, the Court still cannot ascribe such a mental element to the named Defendants. This Court is not alone in its analysis of or the results reached on such a record. Other courts have ruled similarly on comparable facts regarding prisoners' medical care for broken bones. For example, in *Liefsting v. Bokhari*, 2006 WL 1193176 (E.D. 2006) (slip op.), the prison doctor diagnosed a "swollen" and "bluish" foot as a sprain, but then waited two months before seeing the prisoner again and correctly diagnosing a broken toe. The District Court found no deliberate indifference in the prisoner's allegations, (and no constitutional violation), and granted the defendants' motion to dismiss. *Id*. at *4-5 (citing other cases, including *Jackson v. Runnels*, No. Civ. S-02-2756, 2005 WL 1712268, 4-5 (E.D.Cal. 2005), which held that the doctor was not deliberately indifferent when he initially prescribed Ibuprofen for a foot injury and then waited a month to see the prisoner again to diagnose the injury as a broken foot).

Similarly, in *Abu-Fakher v. Brodie*, 2005 WL 627980 (D. Kan. 2005) (unreported), *affirmed*, 175 Fed.Appx. 179 (10th cir. 2006) (unpublished), the District Court found negligence, at most, regarding the initial mis-diagnosis and later care the prisoner received for a broken hand. The subjective element of the Eighth Amendment claim was not found and the cause of action dismissed, the court writing that "defendants did not disregard the injury; and reasonable measures, although delayed, were taken to address the medical need." *Id* at *6. Also, the plaintiff "does not state any evidence that health care practitioner intended to mis-diagnose or

improperly treat his injury." *Id.  See also*, *Cain v. Huff*, 117 F.3d 1420, 1997WL 377029, at *5 (6th Cir. 1997) (unpublished) ("Because no genuine issue of material fact exists concerning whether Dr. Richard Huff was deliberately indifferent to Cain's serious medical needs, we AFFIRM the district court's grant of summary judgment."). The same is true here.  This Court finds that O'Bryan has failed to state a constitutional claim because he has failed to present any evidence of any Defendant's deliberate indifference to his broken wrist.

Finally, the Court notes that, had the Plaintiff presented facts suggesting deliberate indifference or had he pursued his negligence claim, such that he could proceed further today, then he would have been permitted an opportunity to show that he is indigent and that counsel should be appointed.  However, at this stage of the proceedings, and in the face of the Defendants' motion and supporting documents, the Plaintiff has failed to show any facts which would create an issue for a jury to consider.  Nothing in O'Bryan's factual allegations or attachments suggest that any of the Defendants had the requisite culpable mental state that would constitute a constitutional violation.  Thus, his cause fails on the facts presented, not on legal issues with which an attorney could be of assistance.

<u>CONCLUSION</u>

For the reasons discussed above, it is hereby **ORDERED** as follows:

(1)    The Defendants' motion to dismiss is **DENIED**; however, their for summary judgment is **GRANTED**.

(2)    Plaintiff's Motion for Appointment of Counsel [Record No. 18] is **DENIED**.

(3)     The claims asserted in this action by Plaintiff Joseph P. O'Bryan against the named Defendants are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named Defendants.

This 4th day of September, 2007.

Signed By:

_Danny C. Reeves_  DCR

United States District Judge